Ronald Wilcox, Esq., 176601
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@post.harvard.edu

E-filing

Filed

JUN 2 9 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**ATTORNEY FOR PLAINTIFF**

ADR

*Paid*
*SI*
*99*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER JACHETTA,<br><br>     Plaintiff,<br><br>     v.<br><br>CAPIO PARTNERS, LLC,<br>and DOES 1-10,<br><br>     Defendants. | ) Civil Action No.<br>) <br>) **CV12-03410 PSG**<br>) |

## COMPLAINT

## DEMAND FOR JURY TRIAL

### I.  INTRODUCTION

1.  Defendants made repeated telephone calls to Plaintiff's cellular telephone, in an attempt to collect a disputed medical debt, despite her repeated requests they cease, including calling her approximately ninety (90) or more times in about ninety (90) days, from March-June 2012.

2.  Defendants used automated dialing systems, and pre-recorded messages to telephone Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act. Defendant made repeated threats to continue to call until Plaintiff paid, and would abusively hang up. At times Defendant spoofs or disguises its identity and who is calling; and also fails to meaningfully identify itself.  Defendants' telephone calls had the natural consequence to abuse, harass and annoy, and were with such frequency as

1

to be unreasonable under the circumstances.  Defendants engaged in false, deceptive, misleading, and unfair practices in an attempt to collect a debt.

3.   Defendant has a business plan and practice of spoofing or disguising its telephone number and where it is calling from, making repeated and continuous calls (via the use of automated dialing systems) in an attempt to pressure people to repay debts, verbal abuse when they do connect with someone, and refusing to cease and desist. See *Larson v. Capio Partners, LLC,* 12-4081 (C.D. Cal. May 10, 2012)(repeated calls in an attempt to collect, spoofing telephone number and where call is coming from), *Leone v. Capital Partners*, LLC, 12-02114 (D. CO. April 30, 2012)(spoofing telephone number and where call is coming from, *Samples v. Capio Partners, LLC,* (M.D. TN April 30, 2012)(spoofing telephone number and where call is coming from), *Longo v. Capio Partners, LLC,* SACV11-00010 AG (C.D. Cal. January 4, 2011)(fail to cease and desist).

4.   As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered emotional injury, including severe and substantial emotional distress, and actual damages including but not limited to, anxiety, migraine headaches, nausea, stress, fear, lack of concentration, lack of appetite, difficulty sleeping, embarrassment, upset, anger, frustration, amongst other injuries.

5.   This is an action for damages brought by a consumer to redress the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter "FDCPA"), California's Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 et seq. (hereinafter, "state Act"), and related common law claims, which prohibit debt collectors from engaging in abusive, deceptive and unfair practices in their collection of consumer debts.

6.   According to 15 U.S.C. §1692:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## II. JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under 15 U.S.C. sec. 1692k(d), 28 U.S.C. sec. 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. sec. 1367.  Venue in this District is proper in that Defendant transacts business here and the conduct complained of occurred here.

## III. PARTIES

8. Plaintiff JENNIFER JACHETTA (hereinafter "MS. JACHETTA") is a natural person residing in Santa Clara County, California.

9. MS. JACHETTA is "consumer" as that term is defined under 15 U.S.C. §1692a(3) and under California Civil Code §1788.2.  MS. JACHTTA is a "debtor" as defined by California Civil Code §1788.2.

10. Defendant CAPIO PARTNERS (hereinafter "CAPIO"), is a foreign corporation with a principal place of business at: 2222 Texoma Pkwy, Suite 150, Sherman, TX 75091, Tel (888) 876-2817.

11. CAPIO regularly engages in the business of collecting debts owed to third parties.

12. CAPIO regularly engages in the business of collecting debts on its behalf in Santa Clara County, California, through means of interstate commerce, including the United States mails and the telephone. CAPIO's principal purpose is the collection of debt.

13. CAPIO's website explains how it buys debts related to medical services, for purposes of collection. See http://www.capiopartners.com/news.html.

14. CAPIO advertises a "Complaintless collections" process. See http://www.capiopartners.com/index.html.

15. CAPIO's website explains the company seeks to hire people with experience working in call centers, and those with experience with the Ontario computer system, used for collecting debts. See sofhttp://www.capiopartners.com/careers.html

16. CAPIO is a "debt collector" as defined by 15 U.S.C. §1692a(6).

17. CAPIO is a "debt collector" as defined by California Civil Code §1788.2.

18. Plaintiff is ignorant of the names and capacities of Defendants herein sued as DOES 1-10 inclusive, and therefore sue these Defendants by such fictitious names.  When the true names and capacities of these Defendants become known, Plaintiff will amend this Complaint to include their true names and capacities and, if necessary, will seek leave to amend to add additional allegations against them. Plaintiff is informed and believes, and so alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in the Complaint, and that Plaintiff's damages were proximately caused by their conduct.

19. Any reference hereinafter to "CAPIO", "Defendant" or "Defendants" or without further qualification is meant by these Plaintiffs to refer to each Defendant named above, and or to other individual employees or agents of these Defendants who names are not yet known. Each of the defendants is an agent and/or employee of one another, and was acting in the scope of that agency and/or employment when performing the acts or omissions noted herein.  Defendants approved and/or ratified the wrongful acts herein.

IV. **FACTUAL ALLEGATIONS**

20. Plaintiff allegedly incurred obligations relating to some medical services.

21. The alleged debt was primarily incurred for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and "consumer debt" as that term is defined by Cal. Civil Code § 1788.2(f).

4

22. MS. JACHETTA is informed and believes, and thereon alleges that sometime thereafter on a date unknown to MS. JACHETTA the debts were sold, assigned or otherwise transferred to CAPIO, who then attempted to collect the debts.

23. On or about mid to late 2011, CAPIO began to make repeated and continuous telephone calls in an attempt to collect a debt.

24. Each of the unsolicited calls were to Ms. Jachetta's cellular phone and without her consent.

25. Upon information and belief CAPIO made recordings of its calls with MS. JACHETTA.

26. MS. JACHETTA had disputed the debt and asked CAPIO to stop calling her about any debts, right from the beginning.

27. CAPIO stated it would continue calling MS. JACHETTA until she paid the debt.

28. CAPIO'S repeated and continuous calls to MS. JACHETTA continued into 2012.

29. CAPIO telephoned MS. JACHETTA at least twice on March 14, 2012.

30. CAPIO telephoned MS. JACHETTA at least twice on March 15, 2012.

31. CAPIO telephoned MS. JACHETTA at least once on March 19, 2012.

32. CAPIO telephoned MS. JACHETTA at least twice on March 20, 2012.

33. CAPIO telephoned MS. JACHETTA at least once on March 21, 2012.

34. CAPIO telephoned MS. JACHETTA at least twice on March 22, 2012.

35. CAPIO telephoned MS. JACHETTA at least twice on March 23, 2012.

36. CAPIO telephoned MS. JACHETTA at least twice on March 24, 2012.

37. CAPIO telephoned MS. JACHETTA at least twice on March 26, 2012.

38. CAPIO telephoned MS. JACHETTA at least four times on March 27, 2012.

39. CAPIO telephoned MS. JACHETTA at least twice on March 28, 2012.

40. CAPIO telephoned MS. JACHETTA at least twice on March 29, 2012.

41. CAPIO telephoned MS. JACHETTA at least twice on March 30, 2012.

42. CAPIO telephoned MS. JACHETTA at least four times on March 31, 2012.

43. On or about April 4, 2012, MS. JACHETTA had one of her several telephone conversations with CAPIO. She reiterated that about three weeks earlier she had demanded an itemization of the alleged medical debt.

44. CAPIO demanded it would continue calling unless MS. JACHETTA made payments of $50/month.

45. When MS. JACHETTA acquiesced CAPIO then placed a manager on the call who insisted MS. JACHETTA was required to pay $1,600 immediately, or $350 immediately, and promise to pay $50/month, or CAPIO would continue to call her.

46. CAPIO's manager indicated he had MS. JACHETTA's credit report right in front of him and could see she had a credit card she could use to make this higher demand CAPIO was now insisting on.

47. MS. JACHETTA told CAPIO's manager that the credit card was her mother's, and in response to further questioning revealed her father had passed away less than one (1) year ago.

48. CAPIO's manager responded, something to the affect of, "that's not my problem, you need to call your mom and get her to help you pay the bill."

49. CAPIO's manager said MS. JACHETTA was not cooperating and abusively hung up the telephone on her.

50. CAPIO had hung up on MS. JACHETTA at least twice before.

51. On or about April 2012 MS. JACHETTA sent CAPIO a letter disputing the validity of the debt.

52. On April 10, 2012, CAPIO sent MS. JACHETTA a letter purporting to contain verification of the debt.

53. CAPIO continued to call MS. JACHETTA in the first three (3) weeks of April 2012.

54. CAPIO telephoned MS. JACHETTA at least three times on April 23, 2012.

55. CAPIO telephoned MS. JACHETTA at least one time on April 24, 2012.

56. CAPIO telephoned MS. JACHETTA at least one time on April 25, 2012.

57. CAPIO telephoned MS. JACHETTA at least one time on April 26, 2012.

58. CAPIO telephoned MS. JACHETTA at least one time on April 27, 2012.

59. CAPIO telephoned MS. JACHETTA at least one time on April 28, 2012.

60. CAPIO telephoned MS. JACHETTA at least twice on April 30, 2012.

61. CAPIO telephoned MS. JACHETTA at least one time on May 1, 2012.

62. CAPIO telephoned MS. JACHETTA at least five times on May 4, 2012.

63. CAPIO telephoned MS. JACHETTA at least three times on May 8, 2012.

64. CAPIO telephoned MS. JACHETTA at least three times on May 9, 2012.

65. CAPIO telephoned MS. JACHETTA at least three times on May 10, 2012.

66. CAPIO telephoned MS. JACHETTA at least one time on May 12, 2012.

67. CAPIO telephoned MS. JACHETTA at least two times on May 15, 2012.

68. CAPIO telephoned MS. JACHETTA at least three times on May 16, 2012.

69. CAPIO telephoned MS. JACHETTA at least two times on May 21, 2012.

70. CAPIO telephoned MS. JACHETTA at least three times on May 23, 2012.

71. CAPIO telephoned MS. JACHETTA at least one time on May 24, 2012.

72. CAPIO telephoned MS. JACHETTA again on May 31, 2012.  Ms. JACHETTA told David she needed

    him to remove her cell phone number from CAPIO's call lists.

73. CAPIO telephoned MS. JACHETTA again on June 1, 2012.  MS. JACHETTA told Oshay to remove

    her cell phone number from CAPIO's call list.  Oshay stated something to the affect of, "we can not

    legally remove your cell number from our call list because you owe us a debt we are trying to collect."

74. CAPIO telephoned MS. JACHETTA at least three times on June 8, 2012.

75. CAPIO telephoned MS. JACHETTA at least four times on June 11, 2012.

76. CAPIO telephoned MS. JACHETTA at least four times on June 12, 2012.

77. CAPIO telephoned MS. JACHETTA at least four times on June 13, 2012.

78. CAPIO telephoned MS. JACHETTA at least four times on June 14, 2012.

79. On June 15, 2012, CAPIO received MS. JACHETTA's written cease and desist letter.

80. CAPIO telephoned MS. JACHETTA at least three times on June 15, 2012.

81. CAPIO telephoned MS. JACHETTA at least one time on June 16, 2012.

82. CAPIO engaged in conduct the natural consequence which was to abuse and harass, including making repeated and continuous calls and hanging up on MS. JACHETTA.

83. CAPIO would fail to meaningfully identify itself.

84. CAPIO telephoned MS. JACHETTA with such frequency that would be unreasonable under the circumstances.

85. CAPIO would spoof its calls, or use different telephone numbers, to make it appear they were calling from neighboring towns, in an attempt to deceive the consumer as to who is calling.

86. CAPIO engaged in false, deceptive and misleading practices in an attempt to collect a debt, including failing to disclose who was calling and the purpose of the call.

87. CAPIO made false, deceptive and misleading statements in an attempt to collect a debt; and engaged in conduct it could not lawfully take.

88. CAPIO engaged in unfair and unconscionable practices in an attempt to collect a debt, including using an automated dialing system, to place telephone calls to Plaintiff's cell phone, without MS. JACHETTA's consent.

## V.  <u>FIRST CAUSE OF ACTION - FDCPA</u>

89. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

90. Defendants' acts and omissions, and course of conduct as more fully described above constitute numerous and multiple violations of the FDCPA, 15 U.S.C. §1692 et seq., including but not limited to the violations: §1692c, § 1692d, 1692d(5), 1692d(6), 1692e, 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

78. As a result of Defendants' violations, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs, pursuant to 15 U.S.C. §1692k et seq.

## VI.  <u>SECOND CAUSE OF ACTION – ROSENTHAL FDCPA</u>

79. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

80. The foregoing acts and omissions by these Defendants with respect to Plaintiff in their attempts to collect a consumer debt from Plaintiff constitute numerous and multiple unfair, deceptive, misleading practices made unlawful pursuant to the California Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code §§ 1788-1788.32, including §§ 1788.11, 1788.11(d), 1788.11(e), and 1788.17.

81. Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees and costs.

## VI.  <u>THIRD CAUSE OF ACTION – INTRUSION UPON SECLUSION</u>

82. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

83. The foregoing acts of Defendants as described herein constitute an invasion of the Plaintiff's privacy and an intrusion upon her right of seclusion.

84. Plaintiff has a common law right to, and a reasonable expectation of privacy, her home and place of employment, and in regard to her private affairs.

85. Defendants' abusive and improper collection practices in the collection of this debt constituted a substantial invasion upon Plaintiff's seclusion and privacy, and would be highly offensive to a reasonable person.

86. Defendants intended to cause emotional distress, and/or engaged in reckless disregard of the probability of causing Plaintiffs emotional distress.

87. As a proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined by proof and a finder of fact at trial.

88. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

## VII. FOURTH CAUSE OF ACTION

## TELEPHONE CONSUMER PROTECTION ACT

89.   Plaintiff repeats, re-alleges and incorporates by reference all other paragraphs.

90.   At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. § 153(32).

91.   At all times relevant to this complaint, the Defendant has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. § 153(14) that originated, routed, and/or terminated telecommunications.

92.   The Defendant at all times relevant to the complaint herein engages in "telecommunications" defined by the TCPA U.S.C § 153(43).

93.   The Defendant at all times relevant to the complaint herein engages in "interstate" communications" by the TCPA U.S.C. § 153(22).

94.   At all times relevant to this complaint, the Cross-Defendant has used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. § 153(52), that existed as instrumentalities of interstate and intrastate commerce.

95.   At all times relevant to this complaint, the Cross-Defendant has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200 (f) (1).

96.   Defendants violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(b)(1)(A), by using an automatic telephone dialing system to telephone a cellular phone, without Plaintiff's consent.

97.   Defendants' violations were willful and knowing.

98.    As a result of these violations of the TCPA, Defendants are liable to Plaintiff for statutory damages, including treble damages.

99.    Defendants engaged in willful and knowing violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(b)(1)(A).

100.   Defendants used an automated dialing system and pre-recorded messages to telephone Plaintiff's cellular telephone, without his consent.

101.   Defendants' acts were willful, intentional and knowing.

102.   Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

103.   Plaintiff is entitled to recover actual and punitive damages.

## IX.   FIFTH CAUSE OF ACTION - NEGLIGENCE

104.   Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

105.   Defendants' outrageous, abusive and intrusive acts as described herein constituted negligent infliction of emotional distress.

106.   Plaintiff suffered (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress.

107.   Defendants' conduct as described herein was wrongful conduct in that the Defendants conducted their business in an abusive, oppressive, and harassing manner.

108.   Defendants' actions and omissions as described herein constitute negligence in that Defendants owed Plaintiff a duty of reasonable care in the collection of the alleged debt, and use of the telephone in an attempt to collect such debts, said duties were breached, and said breach was the proximate cause of damages suffered by Plaintiff.

109.   Defendants owed a duty to refrain from outrageous and unlawful calls in connection with their attempts to collect a debt.

110.    Defendants' actions and omissions demonstrate a conscious disregard of the rights or safety of others, and constitute despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregards of his rights.

111.    Plaintiff suffered damages due to Defendants' actions in an amount to be determined at trial.

112.    Plaintiff is entitled to punitive damages for the actions and omissions of the Defendants as described herein.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A.  Statutory and actual damages pursuant to 15 U.S.C. § 1692k

B.  Statutory and actual damages pursuant to California Civil Code § 1788.17 and 1788.30.

C.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k, California Civil Code § 1788.17 and Civil Code § 1788.30.

D.  Actual and punitive damages.

E.  Award statutory damages in the amount of $500.00 for each violation of the TCPA against all of the Defendants, and/or treble damages for each willful or knowing violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

F.  For such other and further relief as may just and proper.

Respectfully submitted,

_____          6/29/12
Ronald Wilcox, Attorney for Plaintiff              Date

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demand trial by jury in this action.

_____          6/29/12
Ronald Wilcox                                      Date

12